UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA,

v.   No. 4:21-cr-0273-P

AUSTIN CARL THOMAS RIGGINS.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Austin Carl Thomas Riggins's Motion to Suppress Evidence and Request for Evidentiary Hearing ("Motion"). ECF No. 16. Having considered the Motion and attachments, the Government's Response and attachments (ECF No. 22), the testimony of the Government's witnesses, and the exhibits presented during the suppression hearing (ECF No. 30), the Court concludes that Defendant's Motion will be **DENIED.**

## BACKGROUND

On March 31, 2021, at approximately 11:33 a.m. Olney Police Chief Dan Birbeck and Office Joe Logan responded to a call regarding a suspicious vehicle or person in the 1200 block of West Main Street in Olney, Texas. Upon arrival, the officers approached a parked, running vehicle and found Defendant asleep in the driver's seat. The interaction between the police and Defendant was recorded on Chief Birbeck's body camera, which Chief Birbeck testified was affixed to his chest, roughly a foot and a half below his eyeline.

Chief Birbeck testified that when he arrived at the driver's window, he looked inside the car and observed Defendant apparently asleep in the driver's seat. Several seconds later, Chief Birbeck began knocking on the window; Defendant was unresponsive. After Officer Logan approached the vehicle to assist, Chief Birbeck walked to the passenger side of the car.

Chief Birbeck spoke to Defendant and said people were worried about him and asked Defendant to turn off the engine. Defendant did so and got out of the car. The officers and emergency medical personnel

(EMT)—whom Chief Birbeck had called to the scene due to Defendant's condition—believed that Defendant was intoxicated. The body camera video shows Chief Birbeck asking Defendant his name, and as Defendant responded, "Austin," Birbeck said, "Riggins." Chief Birbeck testified this was because he had recognized Defendant and was aware of his long criminal history, including a history of drug distribution. Chief Birbeck testified that during the questioning, the driver's side door of the car was open and that he could see a set of scales, commonly used in the drug trade, in the storage pocket of the driver's side door.

The body camera video then shows EMT personnel and Birbeck asking Defendant questions about his health. Defendant stated he was tired, denying that he was under the influence of drugs or alcohol. Chief Birbeck testified that Defendant had slurred speech, and EMT DaLayna Riddle testified that Defendant appeared to be intoxicated.

The body camera video shows Defendant was wearing a jacket with a large, left-side pocket. During the encounter, EMT Riddle can be seen on Defendant's left side. The video shows her tilting her head before she began mouthing words to Birbeck and gesturing toward her pocket. EMT Riddle testified that she gestured because at that point she saw a syringe in Defendant's pocket.

Chief Birbeck then asked Defendant what he had in his pocket. As Birbeck moved his arm toward the pocket, Defendant moved his arm back and exposed the pocket. Freezing the body camera video at that time, the video shows either the top of a syringe or Defendant's finger protruding from the bottom corner of the defendant's left jacket pocket. Chief Birbeck testified that he saw a syringe in plain view at that time. He then pulled at the side of the pocket to get a better view and to see if there was any other harmful items. Chief Birbeck testified that when he touched the pocket, the syringe slipped down into Defendant's pocket. Next, Birbeck handcuffed the defendant before he removed the syringe from Defendant's pocket and remarked: "That's kind of in plain view, huh?" Birbeck found methamphetamine in Defendant's pocket and placed him under arrest.

On November 8, 2021, Defendant filed the instant Motion to Suppress, arguing that the methamphetamine Defendant is charged with was obtained as a result of an illegal search. ECF No. 16. Defendant also requested an evidentiary hearing. *Id.* In response to the Court's order for expedited briefing, the Government filed a response (ECF No. 22), and the Court scheduled a hearing on the Motion. ECF No. 19. At the suppression hearing, the Government called two witnesses, Chief Birbeck and EMT Riddle, and the Government's Exhibits 1, 2, 3, and 4 and Defendant's Exhibits 1 and 2 were admitted into evidence. ECF Nos. 30, 31.

The Motion to Suppress is now ripe for review.

## LEGAL STANDARD

Although "the burdens of production and persuasion generally rest upon the movant in a suppression hearing[,] . . . if a defendant produces evidence that he was arrested or subjected to a search without a warrant, the burden shifts to the government to justify the warrantless arrest or search." *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977). Then the Government must prove the constitutionality of the search by a preponderance of the evidence. *See United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001) ("When the government searches or seizes a defendant without a warrant, the government bears the burden of proving, by a preponderance of the evidence, that the search or seizure was constitutional.").

Warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted)); *see United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002). Law enforcement officers, however, may seize items they find in plain view without a search warrant. *United States v. Munoz*, 150 F.3d 401, 411 (5th Cir. 1998) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). An item is considered in plain view if "(1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was 'immediately

apparent;' and (4) the police had a lawful right of access to the item." *United States v. Rodriguez*, 601 F.3d 402, 407 (5th Cir. 2010) (citing *Horton v. California*, 496 U.S. 128, 137–37 (1990)). The incriminating nature of an item is "immediately apparent" when the police have probable cause to believe that the item is evidence of a crime or contraband. *Rodriguez*, 601 F.3d at 407. And the police officers' community caretaking function permits them to, *inter alia*, investigate parked vehicles to ensure the safety of citizens. *United States v. Toussaint*, 838 F.3d 503, 507–08 (5th Cir. 2016).

## ANALYSIS

Because it is undisputed that the Government conducted a warrantless search, the Government bears the burden of proving that the search was valid. *Guerrero-Barajas*, 240 F.3d at 432. The Government sets forth three justifications supporting the validity of the search, but the Court need only address the first because it is dispositive: the plain view doctrine.

Chief Birbeck unequivocally testified that he saw the syringe in Defendant's pocket when he moved toward him. He testified that he moved toward Defendant after he was notified by EMT Riddle to check Defendant's pocket. EMT Riddle testified that she motioned for Chief Birbeck to check Defendant's pocket because she saw a syringe in it. Chief Birbeck further testified that when he approached Defendant's left side to view the inside of the pocket, he saw the syringe, and when he touched Defendant's pocket, the same syringe slide down inside of it. At that point, Defendant was handcuffed and Chief Birbeck reached into the pocket and pulled out the syringe.

Defendant believes video from Chief Birbeck's body camera tells a different story: the syringe was not in plain view. Rather, what Chief Birbeck saw was Defendant's finger and the syringe only came into Chief Birbeck's view when he pulled at Defendant's pocket. Mot. at 2. According to Defendant, the video confirms that it was not a syringe that Chief Birbeck first saw, but Defendant's finger. The Government and their witnesses argue that the video shows the syringe in plain view.

The Court concludes that having viewed the video in slow motion, having viewed still images of the video, and with the benefit of the witnesses narrating both the video and still images, the video supports that the item appears to be a syringe that is visible before Chief Birbeck ever pulled at Defendant's pocket. But even if the Court did not reach that conclusion from the video, the Court finds credible the testimony of Chief Birbeck when he unequivocally stated he saw the syringe before he pulled at Defendant's pocket. This is corroborated by EMT Riddle's testimony—which the Court also found credible—that she saw the syringe in plain view, which is why she was motioning on the body cam video for the Chief to check Defendant's pocket. And the fact that the video may be inconclusive is not fatal to the Government's position because the location of the body camera on Chief Birbeck's chest would not provide the same vantage point as the one Chief Birbeck actually utilized when he testified he first saw the syringe protruding from the jacket pocket. Thus, although the body camera may not conclusively show a syringe, Chief Birbeck could still have seen the syringe as he testified to.

Based on the totality of the circumstances, the Court concludes that the Government has carried its burden to demonstrate by a preponderance of evidence that the warrantless search of Defendant's pocket was nevertheless valid because the police were lawfully present, the syringe was in plain view, the incriminating nature of the syringe was immediately apparent, and because the police had a lawful right of access to the syringe.

## ORDER

Accordingly, it is **ORDERED** that Defendant's Motion to Suppress should be and is hereby **DENIED.**

**SO ORDERED** on this **22nd day** of **November, 2021.**

_Mark T. Pittman_
Mark T. Pittman
UNITED STATES DISTRICT JUDGE